UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA M. MYERS, et al., | No. 2:23-cv-432-KJN |
| Plaintiffs, | ORDER |
| v. | (ECF No. 10.) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Michael Davies filed this case as administrator of the estate of Donna M. Myers, seeking a refund of taxes paid by Myers for the 2008 tax year.[1] Plaintiffs allege a cause of action under 28 U.S.C. § 1346(a), as well as causes of action for equitable estoppel and promissory estoppel. (ECF No. 1.) Defendant U.S. now moves to dismiss all causes of action. The U.S. contends the court lacks jurisdiction to consider the § 1346 cause of action because this case was not timely filed and because the applicable lookback provisions mean any timely request would result in a refund of $0. The U.S. also contends it has not waived its immunity on the estoppel causes of action, and plaintiffs have failed to state sufficient facts for any claim. (ECF No. 11.) Plaintiffs opposed dismissal and the U.S. replied. (ECF Nos. 20, 21.)

For the reasons that follow, the US's motion is granted in part and denied in part.

---

[1] This case was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c) on the consent of all parties. (ECF Nos. 6, 17, 18.)

1

**BACKGROUND**[2]

Plaintiff Myers did not file a tax return for the 2008 tax year. (See ECF No. 16-2 at 3 (Myers's transcript for the 2008 tax year, noting her 2009 request for an extension to file a return).) In 2013, the IRS filed a substitute return, assessing a tax in the amount of $159,211 plus almost $147,000 in interest and penalties. (ECF No. 1 at ¶ 4(a); ECF No. 16-2 at 3-6 (noting the IRS's 2013 substitute tax return).) In 2014, the IRS abated $5,116.48 in penalties. (ECF No. 16 at 8.) However, from 2015 through Myers's death on April 21, 2018, the IRS collected $15,579.30 on this outstanding tax liability. (ECF No. 1 at ¶ 4(d); ECF No. 16-2 at 3-6.)

Upon Myers's death, plaintiff Michael Davies was appointed administrator of Myers's estate. (ECF No. 1-1 at 68.) On June 27, 2019, Davies requested a refund of the $15,579.30 Myers had paid between 2015 and 2018, submitting numerous documents including a 2008 tax return, the court order appointing Davies as administrator, and Davies's power of attorney. (ECF No. 20-2 at 1, 5-7, and 84; see also ECF No. 16-2 at 5 (showing the IRS's receipt of these documents on July 1, 2019).) Davies's request noted that because the IRS's 2013 assessment "did not attribute any cost basis [from Myers's 2008 sale of a residential property, it resulted] in a vastly inflated tax being due." (ECF No. 20-2 at 1.) The IRS responded on August 6 noting the 2008 return failed to include Myers's signature. (ECF No. 20-3 at 3.) Davies responded on August 21 by submitting the same documents alongside Myers's death certificate demonstrating he was representing the estate. (ECF No. 20-3 at 1.) Five days later, Davies sent copies of these submissions directly to the revenue officer assigned to Myers's case. (ECF No. 20-4.)

///

---

[2] Facts from the complaint that are recited here are construed in a light most favorable to plaintiff—the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). Additionally, the parties provided a number of exhibits that are judicially noticeable, and so the court will rely upon these documents in these findings and recommendations as cited. See Fed. R. Evid. 201; United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may [] consider certain material—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); see also Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (judicial notice proper for exhibits "on which the [c]omplaint necessarily relies."). Axiomatically, where an exhibit asserts facts that are in dispute, the court interprets them in plaintiff's favor. Faulkner, 706 F.3d at 1019.

On December 12, 2019, the IRS determined the estate was entitled to a partial refund of $10,131.30, noting this was the amount Myers paid within 3 years of Davies's summer 2019 submission. (ECF Nos. 1 at ¶ 7; 1-1 at 2 (Ex. I).) The notice stated that "if [Myers does] not have any balances due in other years, the amount shown above will be refunded to you. (Id.) In January of 2020, the IRS abated the prior assessed taxes ($159,211) and remaining interest/penalties (est. $142,000). (ECF No. 16-2 at 5-6.) Then, on February 17, 2020, the IRS issued a notice stating Myers's estate was due a refund in the amount of $12,149.50. (ECF Nos. 1 at ¶ 8; 1-1 at 7 (Ex. II, (calculating an overpayment of $15,279.30 plus $256.87 in interest owed Myers, but less $3,386.67 due to Myers's tax liabilities for the 2012 tax year).) The notice stated that a refund check would be mailed within 2-3 weeks so long as Myers did not owe other taxes or debt. (Id.) Three months later, Davies sent a letter to the IRS requesting the $12,149.50 refund check be sent. (ECF Nos. 1 at ¶ 9; 1-1 at 9 (Ex. III).)

Almost two years later, on February 25, 2022, the IRS informed plaintiff it had no record of receiving Davies's documents for the 2008 tax year. (ECF Nos. 1 at ¶ 10; 1-1 at 21 (Ex. IV).) On March 11, 2022, Davies re-sent the documents to the IRS. (ECF Nos. 1 at ¶ 10; 1-1 at 25 (Ex. V).) A few weeks later, the IRS acknowledged receipt of the Form 1040, but again appeared not to recognize Davies's authority to act on behalf of the estate. (ECF Nos. 1 at ¶ 11; 1-1 at 54 (Ex. VI) (requesting more information, including a Form 1310 "Statement of a Person Claiming Refund Due on a Deceased Taxpayer").) Within the month, Davies re-sent the IRS the Form 1310, his court-appointment letter, and Myers's death certificate. (ECF No. 1-1 at 58 (Ex. VII).) Davies followed up twice more on July 8 and August 8 requesting the refund, to no avail. (ECF No. 1-1 at 70 (Ex. VIII) and 84 (Ex. IX).)

On September 1, 2022, the IRS rejected the request for refund. (ECF Nos. 1 at ¶ 13; 1-1 at 100 (Ex. X).) On October 14, 2022, the IRS sent Davies a notice stating it had received Myers's "amended return . . . on Mar. 17, 2022," but noted it could not be processed without Myers's signature or Davies's authorization to act on behalf of Myers's estate. (ECF Nos. 1 at ¶ 14; 1-1 at 103 (Ex. XI).) On November 1, 2022, Davies signed and re-sent his authorization to the IRS along with a letter and exhibits outlining the history of the dispute. (ECF Nos. 1 at ¶ 14;

3

1-1 at 107-278 (Ex. XII).) Davies again requested the refund on December 16, 2022, again to no avail. (ECF Nos. 1 at ¶ 15; 1-1 at 280 (Ex XIII).)

Davies filed the instant action in this court on March 8, 2023, seeking a refund under 28 U.S.C. § 1346(a) and both promissory and equitable estoppel. (ECF No. 1.) The U.S. moved to dismiss, the parties briefed the issues and requested judicial notice of certain documents, and the court held a hearing on the matter on August 15, 2023. (ECF Nos. 11, 13, 16, 20, 21, and 22.)

**PARTIES' ARGUMENTS**

The U.S. contends the court lacks jurisdiction to consider the § 1346 refund cause of action because: (A) it is untimely, given that the complaint was filed in 2023, Davies submitted the first refund request in June of 2019, and the statute of limitations is two years; and (B) the lookback provisions in 26 U.S.C. § 6511(b)(2) bar any refund on Davies's March 2022 request. The U.S. also argues plaintiffs have failed to state facts sufficient to support any refund claim, and the two estoppel claims cannot lie against the U.S. due to sovereign immunity principles. (ECF No. 11.)

Plaintiffs oppose, arguing the court has subject matter jurisdiction because: (A) Davies's refund request was properly presented to the IRS in June 2019, as supplemented by his resubmission of documents in the years that followed; (B) this lawsuit is timely because the IRS did not reject the estate's refund request until September of 2022; and (C) given the IRS's September 2022 rejection applied to Davies's 2019 request, the lookback provisions allow for a refund of the amounts Myers paid in the three years prior to 2019. Based on the facts in the complaint and supporting exhibits, plaintiffs contend the complaint states a claim for a refund under § 1346(a). Plaintiffs concede the U.S. is immune to claims for promissory estoppel but contend the equitable estoppel claim should proceed given the U.S.'s acceptance of plaintiffs' refund request in December of 2019. (ECF No. 20.) Plaintiffs submitted additional documents demonstrating their submissions to the IRS in June-August of 2019. (ECF No. 20-2; -3; and -4.)

In reply, the U.S. reasserts its arguments from the opening brief. The U.S. also contends plaintiff's June-August 2019 documents constitute a new, third request for a refund and so argue similar contentions regarding the timeliness of this "new claim." (ECF No. 21.)

4

**DISCUSSION**

**I.     Cause of Action for Refund of Tax Paid**

The court begins by analyzing both subject matter jurisdiction and the sufficiency of the complaint on plaintiffs' third cause of action, styled as a "demand for refund of tax paid." (ECF No. 1 at 8.) Congress has provided that district courts have original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." 28 U.S.C. § 1346(a)(1). This jurisdiction is further limited by certain provisions of Title 26, including (as here) that:

> No suit or proceeding shall be maintained in any court [under § 1346(a)] . . . until a claim for refund . . . has been duly filed with the [IRS], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

A "duly filed" refund claim is subject to additional time limitations. First, the refund must be requested with the IRS (as is relevant here) within 3 years from the date the tax return was filed. 26 U.S.C. § 6511(a). Second, if the refund is being requested within this 3-year period, the amount of the refund cannot exceed that portion paid in the 3 years prior to the date the return was filed. 26 U.S.C. § 6511(b)(2)(A) (the applicable "lookback provision" for this case). Third, Title 26 sets additional time limitations for filing a claim in the district court. Relevantly:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax . . . shall be begun before the expiration of 6 months from the date of filing the claim . . ., nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).

Here, the facts stated in the complaint and in the judicially noticeable documents—read in a light most favorable to plaintiffs—support findings that the court has jurisdiction over this cause of action and that a claim has been sufficiently stated. Upon Myers's death, Davies noted the missing 2008 tax return, the IRS's collection on a substituted return, and the substantial effect Myers's failure to file had on the estate's tax liabilities. (See ECF No. 1.) Davies submitted

arguments and supporting documentation to the IRS to indicate that, once the IRS considered losses Myers sustained from the 2008 sale of real property, she would not have owed any taxes for that year and would have been owed a refund. (Id. at ¶ 4; ECF No. 20-2.) Davies requested an audit reconsideration of Myers's 2008 tax year and sought a refund of taxes paid thereon. (ECF Nos. 1 at ¶ 4(d); 16-2 at 3-6.) It appears undisputed that Myers paid $15,579.30 between 2015 and her death on April 21, 2018. (Id.) These facts indicate that Davies satisfied the first portion of the jurisdictional requirements to submit a "duly filed" refund request with the IRS within 3 years from the date the tax return, 26 U.S.C. § 6511(a), as the request and return were submitted simultaneously. (Id.) These facts also plausibly indicate that the amount of the refund Davies sought is some portion of the $15,579.30 paid by Myers, given that she paid this amount over a four-year period but, per 26 U.S.C. § 6511(b)(2)(A), the IRS cannot refund more than what was paid in the 3 years prior to Davies's request.

  Turning to whether this suit is timely in this court, the undersigned again agrees with plaintiffs. Though the refund request was first sent to the IRS in June of 2019, the well-pleaded facts and supporting exhibits indicate that the refund request was not rejected until September of 2022. As plaintiffs note, a taxpayer seeking to file a suit for refund under § 7422(a) has two years from when the IRS mailed "a notice of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532(a) (emphasis added). Thus, plaintiffs had two years from September 1, 2022—the first time the IRS arguably rejected Davies's refund request on the amounts paid between 2016-2019—to file a lawsuit. (ECF No. 1 at ¶ 13; ECF No. 1-1 at 100 (Ex. X).) Given these well-pleaded facts, the court sees no other bar to the general provisions of 28 U.S.C. § 1346 granting Myers a cause of action for a refund of taxes.

  The U.S.'s main argument for dismissal appears to be that the court should treat Davies's various submissions to the IRS as separate and distinct requests for a refund, thereby applying the statute of limitations and lookback provisions to each distinct submission. To wit, the U.S. describes Davies's July 1, 2019 submission as the "First Claim," his March 2022 submission as the "Second Claim," and his June 17, 2019 letter (submitted as an exhibit in the opposition briefing) as a "New Claim." (See ECF Nos. 11 and 21.) However, the pleadings and documents

submitted by plaintiffs indicate that each of these submissions are not distinct claims. Instead, they appear to be part of a lengthy, continuing effort by Davies to seek a refund on taxes Myers paid on the 2008 tax year. The court takes all well-pleaded allegations as true for purposes of a motion to dismiss, so, at best, the U.S.'s contentions and information contained in the tax transcripts (see ECF No. 16-2) create a factual dispute that is not proper for resolution at this stage. Faulkner, 706 F.3d at 1019 (reminding that on a motion to dismiss, the facts are construed in the light most favorable to plaintiff—the non-moving party, and where exhibits assert facts that are in dispute, the court construes them in favor of the non-moving party).

The U.S.'s other argument appears to be that the court has no jurisdiction to consider plaintiffs' causes of action because this is a lawsuit for abatement, not for a refund. At the hearing, counsel reiterated this argument that plaintiffs' 2019 submissions were mere abatement requests and not refund requests. The U.S. is correct that abatement claims cannot lie in this court. See 26 U.S.C. § 6404(b). However, the facts belie the U.S.'s argument here, as it seems clear that plaintiffs sought a refund of some portion of the $15,000 Myers paid prior to her death as well as an abatement of the taxes. It would make no sense for plaintiffs to attempt to bring an unauthorized abatement suit in 2023 when, in January of 2020, the IRS had already abated the taxes, penalties, and interest assessed pursuant to the 2014 substitute form. (See ECF No. 16-2 at 5-6.) At best, the question of whether plaintiffs' 2019 letters incorporated a refund request presents a factual matter for resolution at summary judgment or—more likely—for a jury after a trial. Faulkner, 706 F.3d at 1019.

For these reasons, the court finds plaintiffs complied with the prerequisites to filing a claim with this court for refund of taxes, and further finds the pleadings and supporting documents state sufficient facts to support a cause of action under 28 U.S.C. § 1346(a) and 26 U.S.C. § 7422(a).[3]

///

---

[3] Given the court's findings here (that plaintiffs' claims are likely to be resolved after a factual determination by a jury at trial), the parties are highly encouraged, though of course not compelled, to engage in settlement discussions; upon request, the court can check on the availability of another magistrate judge to oversee such a settlement conference.

## II. Estoppel Causes of Action.

Plaintiffs' second cause of action is labeled "promissory estoppel." However, plaintiffs concede that no such cause of action can lie against the U.S. on sovereign immunity principles. Jablon v. United States, 657 F.2d 1064, 1069 (9th Cir. 1981) ("We have not discovered, and the parties have not cited, any precedent in this circuit for an independent cause of action against the government founded upon promissory estoppel."). Thus, this cause of action is dismissed.

As to plaintiffs' first "cause of action" for equitable estoppel, the Ninth Circuit has noted this doctrine is not so much a legal claim as an attempt "to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute." Jablon, 657 F.2d at 1068 (noting the doctrine "has been used in numerous cases marked by evidence of the government's affirmative misconduct"). Here, the U.S. argues no independent cause of action exists for equitable estoppel, and plaintiffs appear to agree with this assertion. Thus, the court proceeds as if this "cause of action" is merely a doctrine plaintiffs seek to apply to this case.

To make a showing at the pleadings stage that the doctrine is applicable in cases against the U.S., plaintiffs must first contend with two threshold concerns: that the government committed "affirmative misconduct going beyond mere negligence," and its "wrongful act will cause a serious injustice [outweighing] the public's interest [in avoiding] undue damage by imposition of the liability." Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989). If these threshold requirements are met, plaintiffs must then allege the traditional elements of the doctrine, which are that the U.S. knew the facts and intended that its conduct would be acted on so that plaintiffs had a right to believe the U.S. so intended; and plaintiffs must be ignorant of the true facts and must have relied on the U.S.'s actions to their detriment. See Id. at 709.

Based on the facts asserted in the complaint and supporting documents, the court finds full dismissal of the equitable estoppel claim is unwarranted at this early stage. Plaintiffs' threshold allegations are sufficient, as the story plaintiffs present is one of the IRS accepting plaintiffs' claim for refund in December of 2019, abating the substitute assessment in January of 2020, and notifying Davies in February 2020 that a portion of the tax Myers paid would be refunded—all

8

before inexplicably notifying Davies some two years later that the IRS never received the documents required to issue the refund so it could not proceed with Davies's request. This set of facts, coupled with the IRS's persistent delays and requests for more information—the same information Davies had sent <u>multiple times prior</u> concerning his authority to act on behalf of the estate—is sufficient at this stage to show the IRS engaged in a pattern of false promises. See <u>Baccei v. United States</u>, 632 F.3d 1140, 1147 (9th Cir. 2011) ("Affirmative misconduct on the part of the government requires an affirmative misrepresentation or affirmative concealment of a material fact, [such as] a pattern of false promises."). The allegations are also sufficient to indicate the injustice to Myers's estate (in not being allowed to pursue a refund the estate arguably deserves) outweighs the public interest here. See, e.g., <u>Gestuvo v. District Director of INS</u>, 337 F.Supp. 1093, 1102 (C.D. Cal. 1971) (estopping the INS from refusing to re-approve an immigrant's third preference classification partly because "[a]ny disruption of the nation's immigration policies that might result from the admission of this single individual into the country would, in short, be miniscule in comparison to the hardship to which he would be subjected by a failure to estop the Service") (as quoted <u>Watkins</u>, 875 F.2d at 708–09). Regarding the traditional estoppel elements, the court must parse the issue more closely than was briefed by the parties because the scope of plaintiffs' claim here is unclear.

As to whether the U.S. can be estopped from paying anything other than the amount it stated in the February 2020 notice, plaintiffs' argument fails. This is because it is not wholly clear from the pleadings and supporting documents just what that amount should be. Between 2019 and 2022, the parties' calculations appear to change as Davies submitted additional forms and the IRS mailed various notices to Davies. Most tellingly, the February 2020 notice listing the specific amount to be refunded came with the caveat that the refund check would be processed "as long as you don't owe other tax or debt we're required to collect." (ECF No. 1-1 at 7.) Thus, it is not clear that even the U.S. knew the complete facts sufficient to bind the government to a specific refund amount. <u>Watkins</u>, 875 F.2d at 708. In any case, the court presumes this amount can be established through sufficient discovery, which would correspond with the main source of plaintiffs' damages on the § 1346(a) cause of action.

However, based on plaintiffs' two-line argument in opposition, it does not appear they are seeking to force the U.S. to pay a specific amount. (See ECF No. 20 at 9 (plaintiffs' noting that they are "not claiming equitable estoppel for the claim for refund it made [but are] claiming equitable estoppel for the actions of the [IRS] after [it] accepted the claim for refund and agreed to refund tax in [December of 2019]. As an affirmative misrepresentation, the IRS said several times that the taxpayer was going to receive the refund claim, that [it] didn't pay.").) Instead, the court reads plaintiffs' "cause of action" as one seeking to estop the U.S. from refusing to finalize plaintiffs' refund request *as was sought in the summer of 2019*. Cabining the estoppel argument to this scope, the undersigned concurs. It appears that in late 2019 to early 2020, the IRS had sufficient information to recognize that Myers overpaid on her 2008 tax liabilities, given that it issued the notice of refund in December of 2019, abated the taxes assessed from the 2014 substitute form, and issued a notice calculating an estimated refund. (ECF Nos. 1 at ¶¶ 7-8; 1-1 at 2 (Ex. I) and 7 (Ex. II); 16-2 at 5-6.) Thus, plaintiffs had a right to await payment and follow up when no check had been received. Davies would not have been aware that sometime between 2020 and 2022, the IRS (apparently) lost the paperwork it previously possessed in December of 2019 when it determined a refund was owed. And there is no reason to believe Davies should have filed a case with this court at any point before the IRS notified Davies that no refund would be provided, given Davies's reliance on the IRS's prior notices that the audit had been conducted, Davies's arguments had been accepted, and the estate would be receiving a refund. These facts support a finding that, to the extent the U.S. argues Davies should have filed this case at another time untethered from the disallowance in late 2022, the U.S. should be estopped from so arguing.[4] Watkins, 875 F.2d at 709. Further, plaintiffs have adequately alleged that the U.S. should be estopped from arguing the lookback provisions should be tied to any time other than Davies's

---

[4] This aspect of the estoppel claim may appear self-evident, as the court has already found the §1346(a) claim timely filed based on the pleadings and supporting documents. However, the court notes some ambiguity in the September 2022 notice which plaintiffs (fairly) characterize as the first time the IRS reneged on its prior assertions that it had received all information necessary to process a refund request. Thus, to the extent the U.S. might argue at summary judgment that the September 2022 notice was something other than the disallowance that triggered the deadlines set forth in 26 U.S.C. § 6532(a), the court finds plaintiffs' estoppel arguments sufficient.

summer 2019 initial request.

**ORDER**

Accordingly, it is HEREBY ORDERED that:

1. The U.S.'s motion to dismiss (ECF No. 10) is GRANTED IN PART and DENIED IN PART;
2. This case proceeds on plaintiffs' cause of action under 28 U.S.C. § 1346(a) for a refund of taxes paid, as well as under the equitable estoppel theory as described above; and
3. Within 30 days of this order, the parties shall submit a joint statement to the court addressing the relevant portions of Local Rule 240 and proposing a schedule for the case; the parties shall notice this submission for a hearing on the court's regular civil calendar.

Dated: August 16, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

myer.432